UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CINDY L. THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>THIRD JUDICIAL DISTRICT COURT, in and for Salt Lake County, State of Utah, Salt Lake Department, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER PERMITTING AMENDED COMPLAINT AND TEMPORARILY GRANTING MOTION TO WAIVE FILING FEE (DOC. NO. 2)**<br><br>Case No. 2:26-cv-00373<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Cindy Thompson asks this court to void various state judicial proceedings spanning more than twenty years.[1] Claiming the proceedings were tainted by fraud in violation of her constitutional rights, Ms. Thompson sues various lawyers, law firms, state judges—and a division of the state court.[2] But Ms. Thompson's claims fail. The *Rooker-Feldman* and *Younger* doctrines bar her claims seeking review of, or interference in, state court proceedings. Eleventh Amendment immunity and judicial immunity shields the state court and state judges, and 42 U.S.C. § 1983 bars Ms. Thompson's claims for injunctive relief. Ms. Thompson also does not state a plausible claim for relief against the attorney defendants or their firms.

[1] (*See* Compl. Doc. No. 1.)

[2] (*See id.*; Mot. to Waive Filing Fee, Doc. No. 2.)

Where the claims in her current complaint are deficient, Ms. Thompson may file an amended complaint, if she chooses to, by **November 30, 2026**. The court previously granted her motion to waive the filing fee[3] temporarily,[4] and does so again, pending screening of the amended complaint, if any is filed.

## BACKGROUND

Ms. Thompson's claims relate to various state court proceedings spanning a twenty-year period. In her complaint, she names defendants associated with the Utah state courts, including the Utah Third District Court itself, along with judges Sandra N. Peuler, Matthew Bates, Mark S. Kouris, Randall N. Skanchy, Kara L. Pettit, and Laura S. Scott (the Judicial Defendants).[5] Ms. Thompson also names as defendants John T. Anderson and his firm Anderson & Karrenberg, LLC; Deborah L. Bulkeley and her firm Carr/Woodall, LLC; and Caleb O Andrews and his firm Miller Harrison LLC (the Attorney Defendants).[6] Ms. Thompson's complaint is extensive, including more than 100 pages of allegations and nearly 700 pages of exhibits[7] describing numerous state court proceedings she believes were improper.

---

[3] (Doc. No. 2.)

[4] (*See* Order Temp. Granting Mot. to Waive Filing Fee and Notice of Screening Under 28 U.S.C. § 1915, Doc. No. 5.)

[5] (Compl. 1, Doc. No. 1.)

[6] (*Id.*) She also sues various "Doe Defendants" who may have assisted the others. (*Id.* at 5.)

[7] This is far from "a short and plain statement" showing entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2) (listing pleading requirements). But for purposes of this review, where

A. Case No. 990912516

The genesis of Ms. Thompson's claims is a 1999 state case before Judge Peuler.[8] Ms. Thompson sued the Wardley Corporation and its owners over real estate commissions.[9] Ms. Thompson's claims were successful and, in 2005, the court entered a judgment in her favor for approximately $79,000.[10] But a prolonged dispute arose because Wardley lacked the assets to satisfy the judgment.[11] Over the next nine years, Ms. Thompson litigated against the defendants' attorney, Mr. Anderson, to identify assets Wardley allegedly hid or fraudulently transferred to other entities.[12] Ms. Thompson contends Mr. Anderson knowingly made false representations to various courts to hide Wardley's assets and obstruct her from collecting on the judgment.[13]

---

Ms. Thompson's pleadings are liberally construed, and attachments to a complaint may be considered in determining if it states a plausible, all these documents are considered. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (noting that under a Rule 12(b)(6) standard, "courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference" (citation omitted)).

[8] (Compl. 7, Doc. No. 1; Ex. 5 to Compl., Doc. No. 1-6 at 6.) Page references for the exhibits to the complaint are to CM/ECF pagination.

[9] (Compl. 7, Doc. No. 1; Ex. 5 to Compl., Doc. No 1-6 at 6.)

[10] (Compl. 7, Doc. No. 1.)

[11] (*See id.* at 7–8.)

[12] (*See id.* at 7–19, 21–23).

[13] (*See id.*)

According to Ms. Thompson, Mr. Anderson perpetrated a "fraud upon the court" in violation of her due process rights.[14]

B. Case No. 070908097

Ms. Thompson filed a second action against the same defendants in 2007, seeking relief for the fraudulent conveyances.[15] Judge Tyrone Medley, who is not a defendant in the present action, presided over this case.[16] Mr. Anderson successfully moved for summary judgment because the statute of limitations had expired.[17] And the court sanctioned Ms. Thompson, ordering her to pay nearly $7,000, because she was "clearly and repeatedly informed" the defendants had no assets they could have fraudulently transferred.[18]

C. Case No. 150903147

"In May 2015, the Office of Professional Conduct filed a formal complaint" against Mr. Anderson for his acts while representing Wardley and its owners.[19] Judge Kouris oversaw the proceedings,[20] finding the OPC did not prove Mr. Anderson violated any

---

14 (*Id.* at 82.)

15 (*See* Ex. 5 to Compl., Doc. No. 1-6 at 8.)

16 (Compl. 9, Doc. No. 1.)

17 (*Id.* at 10.)

18 (*Id.* at 10–11.)

19 (*Id.* at 24.)

20 (*Id.* at 25.)

ethical rules.[21] But Ms. Thompson claims Mr. Anderson "intentionally withheld relevant material facts and information, and made false and misleading statements and representations, and for all intents and purposes, perpetrated fraud upon the Judge Mark S. Kouris Court."[22] She also contends Judge Kouris's decision revealed his "bias, prejudice and disdain for Ms. Thompson."[23]

D. Case No. 150900489

Ms. Thompson does not describe the nature of this case before Judge Kouris. But she notes that Judge Kouris entered a "Vexatious Litigant Order" against her in 2017.[24] She contends Judge Kouris lacked authority to enter this order and he tried to interfere with the case with Judge Stone (addressed next).[25] Ms. Thompson filed a motion to disqualify Judge Kouris and to set aside the "vexatious litigant" order, which Judge Skanchy denied.[26] When she tried to appeal the decision, the court mailed her filing back "with a post-it note reading: 'Filing Rejected—Please Return to Sender.'"[27]

---

[21] (Ex. 44 to Compl., Doc. No. 1-45 at 25.)

[22] (Compl. 36–37, Doc. No. 1.)

[23] (*Id.* at 43.)

[24] (*Id.* at 40.)

[25] (*Id.* at 42.)

[26] (*Id.* at 43.)

[27] (*Id.* at 37.)

E. Case No. 160906509

In 2016, Ms. Thompson filed a new action "for fraud upon the court in the Third Judicial District Court" against Mr. Anderson and the law firm of Anderson and Karrenberg.[28] Judge Stone dismissed the case because "(1) Ms. Thompson's Complaint was barred by the doctrine of res judicata, and (2) Ms. Thompson had been determined by Judge Mark S. Kouris to be a vexatious litigant."[29] Ms. Thompson claims Judge Kouris entered the "vexatious litigant" order to interfere in the case and conceal Mr. Anderson's "fraud upon the court in multiple court proceedings."[30] Ms. Thompson tried to appeal the dismissal.[31] But Judge Skanchy "intervened and failed and refused" to permit the appeal because of the "vexatious litigant" order.[32]

F. Case No. 233900797

Ms. Thompson filed another action in 2023 before Judge Pettit, asking the court to appoint her as guardian and conservator over her aunt, Donna Fowler.[33] She claimed Ms. Fowler had "diminished capacity," and was being abused by her stepdaughter.[34] Ms. Thompson's attorney recommended that Mr. Andrews "be

---

[28] (*Id.*)

[29] (*Id.* at 38–39.)

[30] (*Id.* at 39.)

[31] (*Id.* at 39–40.)

[32] (*Id.* at 40.)

[33] (*Id.* at 46*; see also* Ex. 53 to Compl., Doc. No. 1-54 at 2.)

[34] (Compl. 44, Doc. No. 1.)

appointed by the court as legal counsel to represent [Ms. Fowler]."[35] But Ms. Fowler "refused to meet with or hire [Mr.] Andrews, instead, purporting to have hired as her legal counsel [Ms.] Bulkeley."[36] It is unclear what role Mr. Andrews played in this case.

Ms. Bulkeley filed a motion to dismiss, which Ms. Thompson contends "contain[ed], for the most part, false, fraudulent, misleading and defamatory statements."[37] Specifically, she states Ms. Bulkeley demanded Judge Pettit dismiss the case because of the "vexatious litigant" order.[38] Shortly after, Ms. Thompson's attorney terminated her representation.[39]

Later, Ms. Thompson tried to file an emergency motion to appoint a temporary guardian and conservator, alleging Ms. Bulkeley perpetrated fraud upon the court.[40] While it is unclear what happened next, Ms. Thompson's exhibits show a court judgment against her, ordering her to pay Ms. Fowler at least $9,947.57.[41] Ms. Thompson contends this was an award to Ms. Bulkeley and Mr. Andrews of "attorney

---

35 (*Id.*)

36 (*Id.*)

37 (*Id.* at 45.)

38 (*Id.* at 46.)

39 (*Id.*)

40 (*Id.* at 47–48.)

41 (*See* Ex. 66 to Compl., Doc. No. 1-67 at 2 (approving a writ of execution to enforce a judgment).)

fees and costs," despite Mr. Andrews "never [being] hired by [Ms. Fowler]" and Ms. Bulkeley, perpetrating fraud upon the court.[42]

G. Case No. 230909194

In the final state court case, Judge Scott issued a civil stalking injunction against Ms. Thompson to protect Ms. Fowler.[43] Ms. Thompson provides few details about this case, but she generally alleges Ms. Bulkeley's request for a stalking injunction was fraudulent, Judge Scott did not allow Ms. Thompson to call witnesses, and the order was legally flawed.[44]

* * *

Ms. Thompson asks the court to void these prior proceedings because various defendants committed fraud on the court.[45] And she alleges all defendants' conduct gives rise to claims under: (1) 42 U.S.C § 1983 for "Deprivation of Rights,"[46] (2) 42 U.S.C. § 1985 for "Conspiracy to Interfere with Rights,"[47] (3) 42 U.S.C. § 1986 for "Neglect to Prevent Conspiracy,"[48] and 18 U.S.C. § 1964 for a "Civil RICO" violation.[49]

---

[42] (Compl. 54, Doc. No. 1.)

[43] (*See* Ex. 62 to Compl., Doc. No. 1-63.)

[44] (*See* Compl. 49–53, Doc. No. 1.)

[45] (*See id.* at 55–61.)

[46] (*See id.* at 61–72.)

[47] (*See id.* at 73–74.)

[48] (*See id.* at 74–77.)

[49] (*See id.* at 77–80.)

Consistent with the rest of the complaint, Ms. Thompson's requested relief spans thirty pages. Broadly, she requests (1) compensatory damages, (2) punitive damages, (3) nominal damages, (4) declarations that various ruling violated her rights, (5) declarations that the complaint is actionable under §§ 1983, 1985, and 1986, (6) injunctive relief to prevent future misconduct, and (7) legal fees and costs.[50]

**LEGAL STANDARDS**

When a court lets a party file a case without paying a filing fee, it must dismiss the case if the complaint "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."[51] To decide this, the court uses the standard applied to a motion to dismiss under Rule 12(b)(6).[52] To survive dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[53] Courts accept well-pleaded factual allegations as true, viewing them and drawing reasonable inferences in the plaintiff's favor.[54] But courts do not accept plaintiffs' conclusory allegations as true.[55] The court may consider documents attached to the complaint or referenced in it, including state court records subject to

---

[50] (*See id.* at 80–110.)

[51] 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

[52] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

[53] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[54] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[55] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

judicial notice.[56] Threadbare recitals are insufficient.[57] And "a plaintiff must offer specific factual allegations to support each claim."[58] This court also has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[59]

Because Ms. Thompson represents herself (proceeding without an attorney), her filings are liberally construed.[60] But she must still follow the procedural rules.[61] For instance, she must allege "sufficient facts on which a recognized legal claim could be based."[62] Simply put, courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[63]

---

[56] *See Smith*, 561 F.3d at 1098; *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) (noting facts subject to judicial notice include "another court's publicly filed records concerning matters that bear directly upon the disposition of the case at hand" (citations omitted)).

[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[58] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[59] *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citation omitted).

[60] *Hall*, 935 F.2d at 1110.

[61] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

[62] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[63] *Smith*, 561 F.3d at 1096 (citation omitted).

## ANALYSIS

Ms. Thompson contends her twenty-year case history in the state courts was tainted by fraud, requiring this court to void the proceedings. And she contends she has viable causes of action against all defendants under 42 U.S.C. §§ 1983, 1085, 1986 and 18 U.S.C. § 1964. But she has not pled a plausible claim for relief over which the court has jurisdiction.

Significantly, the court lacks jurisdiction over Ms. Thompson's challenges to her prior state cases under the *Rooker-Feldman* doctrine—and her current state case under the *Younger* abstention doctrine. And the court lacks jurisdiction over her claims against Utah's Third District Court or the Judicial Defendants in their official capacities. As to individual-capacity claims, the Judicial Defendants are entitled to absolute judicial immunity.

Ms. Thompson also does not state a viable claim against the remaining defendants (the Attorney Defendants). Specifically, Ms. Thompson fails to allege facts showing they acted under color of state law as required by 42 U.S.C. § 1983. And where the complaint does not contain allegations showing an agreement to violate Ms. Thompson's civil rights, she does not state claims under § 1985 or § 1986. Finally, Ms. Thompson does not plead the elements necessary for a violation of 18 U.S.C. § 1964.

A. Claims Seeking Review of or Intervention in State Court Proceedings

Claiming fraud upon the court, Ms. Thompson asks the court to void various state court proceedings.[64] While fraud can be a basis to void prior proceedings,[65] the remedy is improper here because this court is prohibited from reviewing the state court decisions. Where the state judges have entered final judgments, the *Rooker-Feldman* doctrine prohibits review. And the *Younger* doctrine prohibits interference with ongoing post-judgment collection proceedings.

1. *The* Rooker-Feldman *Doctrine Bars Challenges to Prior Rulings*

First, the *Rooker-Feldman* doctrine prohibits Ms. Thompson's federal challenge to the rulings in her state cases. Under the *Rooker-Feldman* doctrine, "federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments."[66] In other words, "[t]he losing party in a state court proceeding is generally 'barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal

---

[64] (*See* Compl. 55–61, Doc. No. 1.)

[65] *See Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1265–66 (10th Cir. 1995) (describing the requirements to set aside a judgment for fraud).

[66] *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (unpublished) (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923)).

rights.'"[67] This is true even where a plaintiff alleges a fraud upon the state court.[68] And "[i]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment."[69]

Ms. Thompson alleges fraud tainted her cases.[70] Seemingly, she wants this court to void the state court proceedings at issue.[71] But the state judges have already entered final judgments in each case.[72] Ms. Thompson's request to void various rulings and decisions leading to these judgments is "inextricably intertwined with the merits" of

---

[67] *Id.* at 822 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)).

[68] *Day v. Devries*, No. 22-3107, 2023 U.S. App. LEXIS 13969, at *5–10 (10th Cir. July 6, 2023) (declining to adopt a fraud exception to the *Rooker-Feldman* doctrine); *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 534 (7th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Aug. 3, 2004) (finding *Rooker-Feldman* barred a request to vacate for fraud upon the court).

[69] *Bisbee*, 3 F. App'x at 822 (citing *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir.1997)).

[70] (Compl. 55–61, Doc. No. 1.)

[71] (*See id.* at 57.)

[72] *See Cindy Young v. Wardley Corp.*, No. 990912516, J., Doc. No. 434 (Utah 3d Dist. Ct., filed Dec. 17, 1999); *Cindy L. Thompson v. Wardley Corp. et al.*, No. 070908097, Order Renewing 2009 J. and Den. Mot. To Stay, Doc. No. 209 (Utah 3d Dist. Ct., filed June 1, 2007); *Office of Professional Conduct v. John T. Anderson*, No. 150903147, J., Doc. No. 151 (Utah 3d Dist. Ct., filed May. 12, 2015); *Delano S. Findlay v. Cindy L. Thompson*, No. 150900489, Final Decision, Doc. No. 177 (Utah 3d Dist. Ct., filed Jan. 22, 2015); *Cindy Thompson v. Wardley Corp. et al.*, No. 160906509, Order Dismissing Pl.'s Am. Compl. With Prejudice and Reserving Defs.' Right to Seek Rule 83 Relief, Doc. No. 63 (Utah 3d Dist. Ct., filed Oct. 18, 2016); *In re Donna Fowler*, No. 233900797, J. of Att'y Fees and Costs, Doc. No. 101 (Utah 3d Dist. Ct., filed Mar. 29, 2023) (*In re Donna Fowler)*; *Donna Fowler v. Cindy L. Thompson*, No. 230909194 (Utah 3d Dist. Ct., filed Sept. 23, 2022).

the state court judgments.[73] In effect, Ms. Thompson asks this court to conduct appellate review over the state courts' judgments—which it simply cannot do. Accordingly, the *Rooker-Feldman* doctrine bars Ms. Thompson's claim for fraud upon the court to the extent she seeks review of the judgments in her prior cases.

### 2. Younger *Abstention Bars Intervention in Ongoing Post-Judgment Collection Proceedings*

Next, the *Younger* abstention doctrine bars Ms. Thompson's claims to the extent she seeks to void ongoing post-judgment collection proceedings.

"*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court."[74] *Younger* abstention only applies to three "exceptional" categories of state proceedings—(i) state criminal prosecutions; (ii) certain "civil enforcement proceedings"; and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."[75] These categories, known as the

---

[73] *Bisbee*, 3 F. App'x at 822 (citation omitted).

[74] *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation omitted).

[75] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)).

*Sprint* categories, define *Younger*'s scope.[76] If a case falls into a *Sprint* category, federal courts must abstain from hearing it there is: "(1) an ongoing state judicial . . . proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings."[77]

These circumstances exist in Ms. Thompson's ongoing state court case—and it falls into a *Sprint* category. For example, in *Myers v. Garff*,[78] the Tenth Circuit affirmed the dismissal of a plaintiff's claims relating to ongoing post-judgment enforcement proceedings.[79] After a state court ordered the *Myers* plaintiff to comply with requirements to pay a prior judgment against him, he brought various civil rights claims in federal court.[80] The court affirmed the district court's dismissal under *Younger*, finding abstention proper "in cases such as this one that involve 'processes by which the State compels compliance with the judgments of its courts.'"[81]

Ms. Thompson's only active state case (number 233900797, the Judge Pettit case) falls into this same category. In that case, Ms. Thompson is still actively opposing

---

[76] *See Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (explaining "the possibility of *Younger* abstention is triggered *only when* the state proceeding" falls into one of the *Sprint* categories).

[77] *Id.* (alteration in original) (citation omitted).

[78] 876 F.2d 79 (10th Cir. 1989).

[79] *Id.* at 81.

[80] *Id.* at 80.

[81] *Id.* at 81 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14, (1987)).

efforts to collect from her.[82] She contends the state court's attorney fee award resulted from Ms. Bulkeley's and Mr. Andrew's fraud upon the court.[83] Where that dispute relates to the core process of compelling compliance with a state court judgment,[84] this court must abstain from assessing these ongoing proceedings.

B. Claims Against the State Court and Judicial Defendants

Ms. Thompson's remaining claims against the Utah Third District Court and the Judicial Defendants also fail. The Eleventh Amendment bars her claims against the court and her official-capacity claims against the individual Judicial Defendants for damages and retrospective relief. Section 1983 bars her claims for prospective injunctive relief against the Judicial Defendants. And the Judicial Defendants are entitled to judicial immunity from each of Ms. Thompson's individual-capacity damages claims.

1. *Eleventh Amendment Immunity Bars Official Capacity Claims*

Regardless of the relief sought, the Eleventh Amendment prohibits suits against a state and agencies acting "as arms of the state"[85]—unless the state waives its

---

[82] *See generally* Docket for *In re Donna Fowler*, No. 233900797*.*

[83] (Compl. 54, Doc. No. 1.)

[84] *See Myers*, 876 F.2d at 81.

[85] *See Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983.").

sovereign immunity or Congress abrogates it through legislation.[86] Because the Utah Third District Court is an arm of the state, it has Eleventh Amendment immunity.[87] Utah has not waived its immunity to being sued for any of Ms. Thompson's claims and Congress has not abrogated it.[88] Accordingly, Ms. Thompson's claims against the Utah Third District Court are barred by the Eleventh Amendment.

So, too, are Ms. Thompson's official-capacity claims against the Judicial Defendants. The Eleventh Amendment bars official-capacity claims against state

---

[86] *See Will*, 491 U.S. at 66; *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *see also Papasan v. Allain*, 478 U.S. 265, 276 (1986) ("This [Eleventh Amendment] bar exists whether the relief sought is legal or equitable." (citation omitted)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by [its] own citizens as well as by citizens of another State." (citations omitted)).

[87] *See Bloomquist v. Utah*, No. 2:16-cv-34, 2016 U.S. Dist. LEXIS 141601, at *6 (D. Utah Sept. 16, 2016) (unpublished) (explaining Utah's Third District Court is an "arm[] of the state and thus immune from suit under the Eleventh Amendment"), *R.& R. adopted*, 2016 U.S. Dist. LEXIS 140819 (D. Utah Oct. 11, 2016).

[88] *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999) (explaining in § 1983 action that "Utah has not waived its Eleventh Amendment immunity by statute"); *Romero v. Off. of Recovery Servs.*, No. 2:16-CV-20, 2018 U.S. Dist. LEXIS 195351, at *7 (D. Utah Nov. 13, 2018) (unpublished) (holding sovereign immunity barred plaintiff's § 1985 claim against a state agency); *Manzanares v. Reyes*, No. 2:14-CV-00040, 2015 U.S. Dist. LEXIS 136437, at *11 (D. Utah Oct. 5, 2015) (unpublished) (finding Utah has not waived immunity as to § 1986); *Bernard v. Vermont*, No. 1:23-CV-00241, 2024 U.S. Dist. LEXIS 34744, at *3–4 (D. Colo. Feb. 16, 2024) (unpublished) (stating Congress did not abrogate states' sovereign immunity under 18 U.S.C. § 1962); Utah Code Ann. § 63G-7-301 (waiving sovereign immunity only to specific claims).

officials for monetary damages and retrospective relief.[89] Although a plaintiff may seek prospective relief for an ongoing violation of federal law,[90] "a declaration that a state officer has violated a plaintiff's federal rights in the past" is not prospective relief.[91] Among other things, Ms. Thompson asks for monetary damages and declarations about past conduct.[92] The Eleventh Amendment bars these requests.

2. *Statutory Bar on Injunctive Relief Against Judges Under 42 U.S.C. § 1983*

Ms. Thompson asks for injunctive relief against the Judicial Defendants. But it is barred by 42 U.S.C § 1983. Under § 1983, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[93] Ms. Thompson does not allege the Judicial Defendants acted outside their judicial capacities or violated a declaratory decree, and she has not shown declaratory relief is unavailable in state court. Her claims arise from her grievances with the Judicial Defendants' actions during state court proceedings. In those cases, the

---

[89] *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004); *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ("The Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past." (citation omitted)).

[90] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

[91] *K. A. v. Barnes*, 134 F.4th 1067, 1075 (10th Cir. 2025) (*quoting Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)); *see also Johns*, 57 F.3d at 1554–55.

[92] (*See* Compl. 80–110, Doc. No. 1.)

[93] 42 U.S.C. § 1983.

state courts repeatedly addressed Ms. Thompson's constitutional arguments concerning her access to the courts and other related rights. The fact that her arguments did not prevail does not render relief unavailable. Accordingly, neither statutory exception applies, and § 1983 bars Ms. Thompson's claims for injunctive relief against the Judicial Defendants.

3. *Judicial Immunity Bars Claims for Monetary Damages*

"[G]enerally, a judge is immune from a suit for money damages,"[94] including for each claim Ms. Thompson alleges.[95] This "protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."[96] "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."[97] "The only exceptions to judicial immunity are for 'actions not taken in the judge's judicial capacity' and 'for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"[98]

---

[94] *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (citations omitted).

[95] *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (§ 1983); *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986) (§§ 1985 & 1986); *Huber v. Romero*, No. 2:25-CV-01098, 2026 U.S. Dist. LEXIS 33039, at *7–8 (D. Utah Jan. 22, 2026) (unpublished) (18 U.S.C. § 1962).

[96] *Bradley v. Gray*, 78 F. App'x 84, 85 (10th Cir. 2003) (unpublished) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)).

[97] *Stump*, 435 U.S. at 356.

[98] *Sherratt v. Braithwaite*, No. 24-4101, 2026 U.S. App. LEXIS 11580, at *8 (10th Cir. Apr. 23, 2026) (unpublished) (quoting *Mireles*, 502 U.S. at 11–12).

Here, the allegations against the Judicial Defendants exclusively relate to judicial proceedings. And excluding the case Judge Kouris presided over,[99] Ms. Thompson does not challenge the state court's jurisdiction in any of her cases. The complaint simply contains a twenty-year history of Ms. Thompson's various lawsuits. Even the nearly 700 pages of exhibits consist of documents related to those proceedings. And under the Utah Constitution, district court judges have "original jurisdiction in all matters" except as limited by the constitution or statute.[100] Ms. Thompson also does not show how any of those proceedings fall outside the Judicial Defendants' judicial capacity. Where Ms. Thompson does not dispute jurisdiction or show actions outside of judicial capacity, judicial immunity bars her claims against these defendants.

As to Judge Kouris, Ms. Thompson has not sufficiently disputed his jurisdiction in the vexatious litigant proceedings. She generally claims Judge Kouris lacked subject-matter jurisdiction and interfered with Judge Stone's case, which went "far beyond the scope" of Judge Kouris's judicial and jurisdictional authority.[101] But Ms. Thompson is incorrect. Designating a party as a vexatious litigant falls "within the state court's discretion to ensure the regular operation of the judicial system."[102] Contrary to Ms. Thompson's contention, "the court[ ]may on its own motion" impose restrictions on a

---

[99] (Compl. 41, Doc. No. 1.)

[100] Utah Const. art. VIII, § 5.

[101] (Compl. 41–42, Doc. No. 1.)

[102] *Allen v. Utah Admin. Off. of the Cts.*, No. 2:25-CV-00837, 2026 U.S. Dist. LEXIS 73703, at *17 (D. Utah Apr. 2, 2026) (unpublished).

vexatious litigant,[103] and "any other court may rely upon that court's findings and order its own restrictions."[104] While Ms. Thompson may have been inconvenienced by other judges' enforcement of the vexatious litigant order, they acted within their jurisdiction.

Where each defendant has immunity, Ms. Thompson fails to state a claim for monetary damages against the Judicial Defendants in their individual capacities. And no other type of relief is available for claims against officials in their individual capacities.[105] Accordingly, Ms. Thomspon's claims against the Judicial Defendants in their individual capacities must be dismissed.

4. *Conclusion*

Where the Eleventh Amendment bars her official capacity claims, § 1983 bars her claims for injunctive relief, and judicial immunity bars her claims for monetary damages, all of Ms. Thompson's claims against the Judicial Defendants are subject to dismissal.

---

[103] Utah R. Civ. P. 83(b).

[104] Utah R. Civ. P. 83(j).

[105] *See Vilela v. Valencia*, No. 2:26-CV-00121, 2026 U.S. Dist. LEXIS 139191, at *7–8 (D. Utah June 22, 2026) (unpublished) (dismissing a § 1983 claim for declaratory or injunctive relief against state officials in their individual capacities); *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief."); *see also* Springer *v. Seventh Jud. Dist. Ct.*, No. 24-2174, 2025 U.S. App. LEXIS 29323 (10th Cir. Nov. 7, 2025) (unpublished) (holding a plaintiff could not seek declaratory and injunctive relief under § 1983 against state court judges in their individual capacities); *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (affirming dismissal of a § 1983 claim for declaratory and injunctive relief against a state official in their individual capacity).

C. Claims Against the Attorney Defendants

Ms. Thompson also fails to state any claim for relief against the Attorney Defendants. She does not show they qualify as "state actors" under § 1983. She does not adequately allege they conspired, or neglected to prevent a conspiracy, to violate her rights. And Ms. Thompson does not plead the required elements of a civil conspiracy claim.

1. *42 U.S.C § 1983*

To state a claim under § 1983, a plaintiff must allege "(1) deprivation of a federal right by (2) a person acting under color of state law."[106] "[T]he 'vast weight of authority' holds that 'private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983.'"[107] For a private individual's conduct to constitute state action, it must be "fairly attributable to the state."[108] Four tests determine whether a private actor can be held accountable as a state actor: (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test.[109] Although Ms. Thompson does not address these tests, given her allegations, only the "joint action" test potentially applies. It asks "whether state officials

---

[106] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988) (citation omitted).

[107] *Anderson v. Kitchen*, 389 F. App'x 838, 841 (10th Cir. 2010) (unpublished) (holding the opposing parties' attorneys were not acting under color of state law by being officers of the court (citing *Barnard v. Young* 720 F.2d 1188, 1189 (10th Cir.1983))).

[108] *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (citation omitted).

[109] *Gross v. Samudio*, 630 F. App'x 772, 778 (10th Cir. 2015) (unpublished).

and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[110]

In *Anderson v. Kitchen*,[111] the Tenth Circuit concluded private attorneys did not act under color state law when serving as opposing counsel. There, Mr. Anderson brought a § 1983 claim alleging the defendants wrongfully obtained an eviction order against him by colluding and by misrepresenting facts and law to the court.[112] The court rejected this argument, finding an attorney does not act under color of state law simply by representing a client in court.[113] And while joint action between a private party and state official can constitute state action, "defendants' actions in allegedly misleading a state court judge did not constitute joint action between defendants and the judge."[114]

Ms. Thompson alleges Mr. Anderson, Ms. Bulkeley, and Mr. Andrews acted under color of state law when acting as officers of the court.[115] But, as the *Anderson* court established, representing an opposing party in court does not mean these attorneys acted under color of state law. While Ms. Thompson alleges the attorneys misrepresented facts or law to the court,[116] under *Anderson*, such actions do not satisfy

---

110 *Id.* at 779 (citation omitted).

111 389 F. App'x 838.

112 *Id.* at 839.

113 *Id.* at 841.

114 *Id.*

115 (*See, e.g.*, Compl. 82, Doc. No. 1.)

116 (*See generally id.* at 55–61 (describing various acts of fraud upon the court).)

the joint action test. Where Ms. Thompson's does not allege any other joint action or show a different "state actor" test applies, Ms. Thompson does not state plausible § 1983 claims against the Attorney Defendants.

Ms. Thompson's § 1983 claims against the law firms also fail. She alleges only that the firms knew their attorneys violated her rights and failed to prevent them from doing so.[117] Even if the firms could be vicariously liable for their employees' actions, Ms. Thompson has not sufficiently alleged a § 1983 claim against any attorney. Accordingly, Ms. Thompson's only basis for a § 1983 claim against the firms also fails.

2. *42 U.S.C. § 1985*

Ms. Thompson also asserts 42 U.S.C. § 1985(3) claims against the Attorney Defendants.[118] This section provides a cause of action for certain conspiracies to interfere with civil rights.[119] To assert a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."[120] This statute applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"[121]

---

[117] (*See* Compl. 72, Doc. No. 1.)

[118] (*Id.* at 73.)

[119] *See* 42 U.S.C. § 1985; *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1247 (D.N.M. 2012).

[120] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)); *see also* 42 U.S.C. § 1985(3).

[121] *Tilton*, 6 F.3d at 686 (quoting *Griffin*, 403 U.S. at 101–02).

Ms. Thompson does not plead the necessary elements of a § 1985(3) claim. First, she does not allege class-based animus motivated Mr. Anderson, Ms. Bulkeley, or Mr. Andrews. The complaint contains no allegations to that effect. Next, she does not show the Attorney Defendants conspired. To allege a conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action" among the defendants.[122] Although conspiracies are often established through circumstantial evidence (since direct evidence of an agreement is rare),[123] Ms. Thompson only makes conclusory allegations of an agreement between the Judicial Defendants and the Attorney Defendants. She relies on the broader trend of the court rulings against her. Without more, this does not show an agreement between the defendants. Accordingly, Ms. Thompson does not state a § 1985 claim.

3. *42 U.S.C. § 1986*

42 U.S.C. § 1986 provides a cause of action for neglecting to prevent a conspiracy under § 1985. A claim under § 1986 "depends on the existence of a valid claim under § 1985."[124] Where Ms. Thompson fails to state a claim under § 1985, her § 1986 claim also fails.

---

[122] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing conspiracy under § 1983).

[123] *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (citation omitted).

[124] *Wright v. No Skiter, Inc.*, 774 F.2d 422, 426 (10th Cir. 1985).

4. *18 U.S.C. § 1964*

Finally, Ms. Thompson brings a claim under 18 U.S.C. § 1964, alleging the Attorney Defendants engaged in, and conspired to engage in, unlawful racketeering activity.[125] Section 1964(c) provides a private cause of action for violations of 18 U.S.C. § 1962. Ms. Thomspon alleges the defendants violated subsections (a) through (d) of § 1962. Her claims under each subsection fail.

Under § 1962(a)–(c) "[t]he elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[126] And for a § 1962(c) violation, a plaintiff must also plead that (5) her "business or property was injured," and (6) "the defendant's violation is the cause of that injury."[127] It is difficult to identify any of these elements in Ms. Thompson's complaint—even construing its 800 pages liberally. Although Ms. Thompson uses RICO-claim terminology in her claim for relief, her allegations are wholly conclusory.

For instance, Ms. Thompson does not describe how the Attorney Defendants formed an enterprise. An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[128] The members of an enterprise must associate "together

---

[125] (Compl. 77–80, Doc. No. 1.)

[126] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006)

[127] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017).

[128] 18 U.S.C. § 1961(4).

for a common purpose of engaging in a course of conduct."[129] Ms. Thompson does not draw the through line showing this association, its purpose, or what the broader course of conduct was. Setting aside the conclusory allegations in the complaint, the common thread is that each Attorney Defendant represented one of Ms. Thompson's opponents, mostly in unrelated cases Ms. Thompson initiated. This reflects a series of disconnected events, not an enterprise. Accordingly, on this element alone,[130] Ms. Thompson's claims arising under § 1962(a)–(c) must be dismissed.

Ms. Thompson's remaining claim, under § 1962(d), is also flawed. Section 1962(d) makes it "unlawful for any person to conspire to violate" § 1962(a)–(c). But "[i]f a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."[131] Where Ms. Thompson does not state a claim under § 1962(a)–(c), she also fails to state a claim for relief under § 1962(d).

---

[129] *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Safe Streets All.*, 859 F.3d at 882–83 (defining an "association-in-fact-enterprise" as "a group of persons associated together for a common purpose of engaging in a course of conduct" (citation omitted)).

[130] It is unnecessary to assess the other elements at this time.

[131] *Tal*, 453 F.3d at 1270.

* * *

For these reasons, the complaint is subject to dismissal.[132] Nevertheless, where courts take a lenient view on opportunities to amend for self-represented litigants,[133] Ms. Thompson will be given a chance to amend her complaint.

## CONCLUSION

1. Ms. Thompson may file an amended complaint by **November 30, 2026**. The words "Amended Complaint" should appear in the caption of the document.

2. Ms. Thompson is advised that an amended complaint will completely replace all prior versions of the complaint. Claims which are not realleged in the amended complaint will be deemed abandoned.[134]

3. Once filed, the court will screen the amended complaint under 28 U.S.C. § 1915(e) and Rule 3-2(b) of the Local Rules of Civil Practice.[135]

---

[132] *See* 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

[133] *See, e.g.*, *Dees v. Vendel*, 996 F.2d 310 (10th Cir. 1993); *White v. Adams Cnty. Det. Facility*, 69 F.3d 549 (10th Cir. 1995); *Kennington v. U.S. Dep't of the Treasury*, 490 F. App'x 939 (10th Cir. 2012) (unpublished).

[134] *See Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1137 (10th Cir. 2024) ("An amended complaint supersedes a prior complaint and renders it of no legal effect. Failing to replead a claim, when given leave to do so, ordinarily constitutes abandonment when an amended complaint is filed." (citation modified)).

[135] *See* DUCivR 3-2(b), available at https://www.utd.uscourts.gov/sites/utd/files/Civil%20Rules%20Final%202025.pdf [https://perma.cc/P5J9-A9YV].

4. The court again temporarily grants the motion to waive the filing fee[136] pending screening of the amended complaint, if any is filed.

5. Failure to file an amended complaint may result in dismissal of this action.

DATED this 5th day of November, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[136] (Doc. No. 2.)